UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

In re:

DB CAPITAL HOLDINGS, LLC,

Case No. 10-25805-MER
Chapter: 11 (Involuntary Petition)

Debtor.

## MOTION TO DISMISS OR SUSPEND PROCEEDINGS IN THIS INVOLUNTARY CASE COMMENCED BY CREDITORS WITH DISPUTED CLAIMS AND IN BAD FAITH

Aspen HH Ventures, LLC ("Aspen HH") moves, pursuant to Fed.R.Civ.P. 12(b)(1) and

11 U.S.C. §§ 305 and 1112(b), to dismiss or suspend proceedings in this involuntary chapter 11

case. In support hereof, Aspen HH states as follows:

### Introduction

1.      As this Court is aware from the prior proceedings involving the voluntary

chapter 11 petition filed on behalf of this debtor,[1] there is a dispute and deadlock between the

two members of the debtor, a Colorado limited liability company. The manager of the debtor, an

entity owned and controlled by Thomas DiVenere ("DiVenere"), previously attempted to

commence a voluntary chapter 11 case on behalf of the debtor without the knowledge and

consent of all of the debtor's members. On June 21, 2010, this Court dismissed that case finding

that DiVenere lacked authority to file the voluntary petition. Three days later this involuntary

petition was filed. The petition was filed on the eve of a hearing in a related pending state court

action in which Aspen HH is seeking the appointment of a receiver to assume managerial control

---

[1] Case No. 10-23242-MER.

and wind-up the affairs of the debtor.  As will be discussed below, the filing of this case does not

pass the "smell" test.[2]  It was engineered by DiVenere to perpetuate his managerial control of the

debtor, and to avoid the pending state court receivership proceedings in which he has been

charged with serious acts of managerial misconduct.  In addition, the claims of four of the

petitioning creditors are subject to a subject to a bona fide dispute as to liability and/or amount.

Because the case does not pass the bad faith "smell test," and was filed by an insufficient number

of creditors holding qualified claims, the case should be dismissed.  In the alternative, the Court,

in its discretion, should abstain from exercising its jurisdiction, or suspend further proceedings

and allow the state court action seeking the appointment of a receiver for the debtor to be

resolved.[3]

### Background Facts

2.      The debtor, DB Capital Holding, LLC ("DB Capital"), is a Colorado limited

liability company that was formed to develop and sell interests in a deeded fractional ownership

condominium project in Aspen, Colorado, known as the "Dancing Bear Residences-Aspen" (the

"Project").  DB Capital is in default of its loan agreements with its lender, WestLB AG New

---

[2] Under 11 U.S.C. § 303(i)(2), a court may enter judgment for fees and costs against  petitioning creditors who filed an involuntary case in "bad faith."  Bad faith is not defined in the Bankruptcy Code, but several approaches have been used to determine bad faith, including the "smell test."  *See* 1 Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual ¶ 303.06[1] (Matthew Bender, 3rd ed. rev.)  Utilizing the "smell test," a court considers the totality of the circumstances to determine if the involuntary filing "smells like bad faith."  *Id. See e.g. In re Loe*, 2007 Bank. LEXIS 1146 (Bankr. S.D. Fla. 2007) (filing of an abusive involuntary petition is "odious."); *In re Better Care, Ltd.*, 97 B.R. 738 (Bankr. E.D. Pa. 1987).

[3] 11 U.S.C.§ 303(g) does not permit the appointment of a trustee prior to the entry of an order for relief in an involuntary case filed under Chapter 11.  As such, unless a receiver is appointed in the pending state court proceeding, there will be no independent third-party who will have the authority to make unbiased decisions on behalf of the debtor in this or any other proceedings.  In light of DiVenere's past conduct in this Court, and the pending charges of managerial misconduct in the state court proceedings, DiVenere should not be permitted to continue to serve in a managerial capacity for the debtor.  DiVenere also has an obvious conflict of interest, as he is

York branch, a German banking corporation ("WestLB").  The Project is subject to a pending receivership instituted by WestLB in Pitkin County, Colorado.  DB Capital owes WestLB in excess of $56 million.  The real estate pledged to secure the WestLB loan is worth far less.[4]

3.      DB Capital has two members.  Aspen HH, an Illinois limited liability company, is the Class A member, and has a priority interest in all available cash generated from the Project.  The Class B member is Dancing Bear Development, L.P. ("DB Development"), a Colorado limited partnership.  The two partners in DB Development are DiVenere, and his neighbor and friend, Fred Funk, the professional golfer.  Funk is one of the petitioning creditors in this case.

4.      DB Capital is managed by a third-party "manager," Dancing Bear Management, LLC ("DB Management"), a Colorado limited liability company.  DB Management has no membership or other interest in DB Capital, and is owned and controlled by DiVenere.

5.      On May 21, 2010, Aspen HH was granted leave to intervene in the pending receivership action filed by WestLB in the District Court in Pitkin County, Colorado.  Aspen HH was also granted leave to file a Verified Cross-Claim for the appointment of a receiver for the debtor, DB Capital, and its two affiliates, DB Land and LCH, LLC.  A copy of the Verified Cross-Claim filed by Aspen HH in the Pitkin County action is attached hereto as Exhibit A.

6.      In the Verified Cross-Claim, Aspen HH alleged, among other things, that DiVenere, who had served as the de facto developer and manager of the Project, had misappropriated DB Capital's assets and mismanaged the Project in violation of the DB Capital

---

also an investor with Fred Funk in, and controls, the other member of the debtor which is deadlocked with Aspen HH.

[4]  The real estate which comprises the Project is actually owned by Dancing Bear Land, LLC ("DB Land"), a wholly owned subsidiary of DB Capital.  DB Capital's interest in DB Land is its only real asset.

Operating Agreement. Aspen HH sought the appointment of a receiver pursuant to the provisions of the Colorado Limited Liability Company Act to wind-up and liquidate DB Capital's business and affairs.

7. In addition to the allegations concerning DiVenere's personal misappropriations while managing DB Capital, Aspen HH also alleged in the Pitkin County proceeding that Fred Funk, DiVenere's neighbor and friend, was paid $250,000 per year by DB Capital as a bogus "marketing fee" which, in reality, was the payment of a 5% annual return on his $5 million investment in DB Capital. Aspen HH has alleged that these payments were made in direct violation of the DB Capital Operating Agreement. (See Verified Cross-Complaint at ¶ 29). Funk has asserted his claim for "marketing and promotional" fees in this action as the basis for his claim as a petitioning creditor.

8. Aspen HH also alleged in the Verified Cross-Claim that another DiVenere associate was given a promissory note by DB Capital in the principal amount of $500,000, plus 30% annual interest, in exchange for a loan to DB Capital of only $300,000. The individual who received the bogus promissory note was William Dennis, another one of the petitioning creditors in this proceeding. (See Verified Cross-Complaint at ¶ 32).

9. On May 27, 2010, the Honorable Gail H. Nichols, the District Court Judge presiding in the Pitkin County proceeding, entered an Order, in response to an Emergency Motion filed that day by Aspen HH, scheduling an evidentiary hearing on Aspen HH's motion for the appointment of a receiver for June 9, 2010. On the same day, Judge Nichols also enjoined any further attempts by DiVenere and his counsel from wrongfully taking possession of DB Capital's books and records and required that the records wrongfully taken be returned

immediately.  Copies of Aspen HH's "Emergency Motion for Injunctive Relief and Immediate Appointment of Receiver Pendent Lite Pursuant to § 7-80-812 of the Colorado Limited Liability Company Act," and Judge Nichols' May 27, 2010 Order, are attached hereto as Exhibits B and C respectively.

10.     On the same day that Judge Nichols entered the requested injunctive relief and scheduled the evidentiary hearing on Aspen HH's motion for the appointment of a receiver, DiVenere caused a chapter 11 petition to be filed on behalf of DB Capital in this Court.  A copy of the Voluntary Petition filed by DiVenere on behalf of DB Capital is attached hereto as Exhibit D.

11.     The "List of Creditors" which DiVenere filed in connection with the Voluntary Petition included only four of the five petitioning creditors in this involuntary case.  A copy of the List of Creditors filed with the Voluntary Petition is attached as Exhibit E.[5]  Realty Financial Resources, Inc., one of the petitioning creditors in this case and which claims that it is owed $25,000 by DB Capital, is not identified as a creditor in the List of Creditors filed in the Voluntary Case.  In addition, the amounts which DiVenere listed as being owed to the other four petitioning creditors differ substantially from the amounts the petitioning creditors now claim in this involuntary proceeding.

12.     On Monday, June 21, 2010, this Court granted Aspen HH's motion to dismiss the voluntary chapter 11 case filed by DiVenere, finding that DiVenere lacked authority to

---

[5]  The List of Creditors DiVenere filed with the voluntary chapter 11 petition reflects that DB Capital has debts exceeding $60 million.

commence the case.  A copy of the June 21, 2010 Judgment entered by this Court dismissing the voluntary chapter 11 case commenced by DiVenere is attached as Exhibit F.

13.     The following day, Tuesday, June 22, 2010, counsel for Aspen HH notified Judge Nichols' chambers that this Court had dismissed the chapter 11 case and requested that a status hearing be set in order to reschedule the hearing on Aspen HH's motion to appoint a receiver for DB Capital and its subsidiary entities.  Judge Nichols set the status hearing for that Friday, June 25, 2010, at 9:30 a.m.

14.     On Thursday, June 24, 2010, at 4:09 p.m., just three days after this Court dismissed the voluntary chapter 11 case filed by DiVenere, and once again on the eve of a hearing set in the Pitkin County proceedings, the petitioning creditors filed the involuntary petition.

15.     On June 25, 2010, Judge Nichols was advised of the filing of the involuntary petition and the status hearing which had been set to schedule an evidentiary hearing on Aspen HH's motion to appoint a receiver for DB Capital in the Pitkin County proceeding was cancelled.

16.     For the reasons discussed below, this Court should promptly dismiss this involuntary case pursuant to Fed.R.Civ.P. 12(b)(1) or pursuant to sections 305 or 1112(b) of the Bankruptcy Code.  Alternatively, the Court should immediately suspend further proceedings and allow Aspen HH to seek the appointment of a receiver in the state court proceedings so that an honest, unbiased and disinterested third-party may act on behalf of DB Capital in these proceedings.  As will be shown, dismissing this case, or suspending proceedings to allow the state court to appoint a receiver who will be able to act responsibly in the conduct of DB Capital's affairs, would be in the best interest of the debtor and its legitimate creditors.

Accordingly, Aspen HH respectfully requests that the Court grant the requested relief as soon as practicable.

### Reasons the Requested Relief Should Be Granted Promptly

**A.     The Claims of Four of the Five Petitioning Creditors are Subject to a Bona-Fide Dispute as to Liability or Amount**

17.     Section 303 of the Bankruptcy Code, 11 U.S.C. § 303, governs the commencement of an involuntary case.  An involuntary petition may only be filed by an entity that holds a "claim" against the debtor.  Where, as in this case, the debtor has twelve or more creditors holding claims, three or more entities holding claims against the alleged debtor must join in the filing of the involuntary petition.  11 U.S.C. § 303(b)(1).

18.     It is well recognized that the commencement of an involuntary case against a debtor is an extreme measure that should be carefully scrutinized by the court.  For example, in *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 702 (Bankr. D. Colo. 1984), this Court warned that the filing of an involuntary petition is not something which should be undertaken lightly, and that even a good faith filing creates serious consequences for the debtor.  Other courts have also echoed the same sentiment.  In *In re Landmark Distributors, Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995), a case in which the bankruptcy court awarded substantial compensatory and punitive damages for the improper filing of an involuntary petition, the court stated:  "As has been generally recognized, in light of Code Section 303, petitioning creditors should carefully examine the risks undertaken in the filing of an involuntary petition . . . ."  In *In re McDonald Trucking Co., Inc.*, 76 B.R. 513, 516 (Bankr. W.D. Pa. 1987), the court stated "[t]he filing of an involuntary petition by a creditor must be carefully scrutinized by the court because such action is extreme and carries serious consequences to the alleged debtor . . ."  See also *In re*

*Compuhouse Systems, Inc.*, 168 B.R. 305, 308 (Bankr. W.D. Pa. 1994) aff'd, 85 F.3d 612 (3rd Cir. 1996)(dismissing involuntary case and holding "[a] contested bankruptcy petition must be closely scrutinized because involuntary bankruptcy is an extreme measure that frequently carries severe consequences for the debtor . . .").

19.     To be eligible to file an involuntary petition, each of three or more petitioning creditors must hold a claim "that is not contingent as to liability or subject to a bona fide dispute . . ." 11 U.S.C. § 303(b)(1).  There is no exception to this requirement.  "The Bankruptcy Code clearly states that an involuntary petition can *only* be filed by creditors who hold claims that are not contingent as to liability and are not subject to bona fide dispute." *Landon v. Hunt*, 977 F.2d 829, 832 (3rd Cir. 1992) (emphasis in original). *See also In re American President Lines, Ltd.*, 804 F.2d 1307, 1309 (D.C. Cir. 1986) ("Section 303(b) of the Bankruptcy Code explicitly and clearly prescribes the requirements for commencing an involuntary case . . . and requires the filing of a petition by three or more entities holding claims against the debtor that are not contingent as to liability or subject to bona fide dispute.")

20.     If a creditor's claim is subject to a bona fide dispute as to liability or amount, then the creditor lacks standing to commence an involuntary case, and if there remains an insufficient number of creditors with qualified claims to commence the case, the case must be dismissed. *Riverview Trenton RR Co. v. DCS, Ltd.*, 853 F.2d 1540, 1543 (10th Cir. 1988).

21.     In *Riverview*, the bankruptcy court dismissed an involuntary petition on the ground that the requirement of three petitioning creditors had not been met where one of the creditor's claims was found to be subject to a bona fide dispute.  On appeal, the district court reversed the bankruptcy court and ordered that an order for relief be entered.  The Tenth Circuit

then reversed the district court in part, and remanded the case to the bankruptcy court for further

proceedings. Although the Tenth Circuit determined that two of the three petitioning creditors

had standing to petition for relief, there was an issue whether the third creditor's claim was

subject to a bona fide dispute. The Court held that the third petitioning creditor's claim should

be examined utilizing the "objective standard" which had been first propounded by the Seventh

Circuit. Under the "objective standard":

> the bankruptcy court must determine whether there is an objective basis for either
> a factual or legal dispute as to the validity of the debt. The court need not
> determine the probable outcome of the dispute, but merely whether one exists.
> Once the petitioning creditor establishes a prima facie case that its claim is not
> subject to a bona fide dispute, the burden shifts to the debtor to present evidence
> of a bona fide dispute. Under this objective approach, the debtor's subjective
> intent does not control whether a claim is considered to be subject to a bona fide
> dispute.

853 F.2d at 1544, quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)(internal citations

omitted). Thus, under the "objective standard" applicable in this case, the Court need not

determine the outcome of any dispute as to the legitimacy or amount of any of the petitioning

creditors' claims, but only whether objectively there is a basis for dispute.

22.   In this case there is an objective basis for a bona fide dispute as to liability or

amount with respect to four of the five petitioning creditors' claims.[6]

---

[6] Ordinarily, only the alleged debtor may answer an involuntary petition. *In re Westerleigh Development Corp.*, 141
B.R. 38, 40 (Bankr. S.D.N.Y. 1992). However, a party, such as Aspen HH, holding an equity interest in an alleged
debtor has standing to contest the adequacy of an involuntary petition and the eligibility of the petitioning creditors
under the circumstances presented here. The court in *Westerleigh Development Corp.* held that a bankruptcy court
should permit a shareholder to step in and contest an involuntary petition where the debtor is unable to answer the
petition as a result of a corporate deadlock. *Id.*. The corporate debtor in *Westerleigh* had two 50% shareholders who
were engaged in a prepetition dispute. Like the situation here, the debtor was unable to respond to the petition
because neither of the owners was authorized to act on behalf of the corporation without the other's consent. The
court held that in these circumstances, either shareholder should be afforded standing to contest an involuntary
chapter 11 petition filed against the corporation. *Id.* at 40. Under sections 305 and 1112 of the Bankruptcy Code
(discussed below) any party in interest has standing to seek judicial abstention or dismissal of the involuntary
petition for cause. *In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 & n.4 (Bankr. S.D.N.Y. 2006) (holding that

23.     As discussed above, the claims made by Fred Funk and William Dennis are already the subject of the pending Pitkin County litigation.  Funk is alleged to have surreptitiously and improperly received from DiVenere a 5% return on his $5 million investment in DB Capital, in violation of the DB Capital Operating Agreement, through the auspices of a bogus "marketing" contract.  Dennis participated with DiVenere in an attempt to defraud DB Capital by accepting and then seeking to enforce a bogus promissory note for $500,000, including 30% interest, which he received from DiVenere in exchange for a $300,000 loan.  Thus, the claims of these two petitioning creditors are clearly subject to a bona fide and pending dispute.

24.     The claim of another petitioning creditor, Realty Financial Resources, Inc., is also objectively subject to a bona fide dispute.  The claim appears to be a recent fabrication most likely engineered by DiVenere.  The claim made by Realty Financial in this case, for $25,000, was not even listed in the List of Creditors which DiVenere filed in the voluntary case just over one month ago.  DB Capital has not engaged in any business with Realty Financial since early 2009.  Since March 2010, all of DB Capital's assets have been controlled by a receiver appointed at the request of WestLB.  The claim of Realty Financial does not appear in any of the books and records of DB Capital and, until the involuntary petition was filed, apparently did not exist.

25.     Similarly, the claim of a fourth petitioning creditor, O'Bryan Partnership, Inc. ("O'Bryan"), is also subject to a bona fide dispute as to its amount.  The claim asserted by O'Bryan in connection with the filing of the involuntary petition is for $11,132.43.  This is more

the sufficiency of an involuntary petition may ordinarily only be challenged by the alleged debtor but that any party may bring a motion to dismiss or abstain pursuant to sections 1112(b) and 305(a)).

than two times the amount O'Bryan is shown as being owed in the recent List of Creditors filed by DiVenere. (See Exhibit B, List of Creditors, showing O'Bryan being owed only $5,307.50). Although it is undisputed that O'Bryan provided architectural services for the Project at the request of DB Capital more than a year and a half ago, DB Capital has not retained O'Bryan in the last 30 or so days since DiVenere's List of Creditors was filed, and as such O'Bryan's claim in this proceeding for $11,132.43 is certainly objectively subject to dispute as to the amount.

26.     In short, even if these four petitioning creditors held "claims," each claim is objectively subject to a bona fide dispute.  It is irrelevant, for present purposes, that ultimately the claims may be determined to be legitimate in whole or in part.  The claims as alleged in the involuntary petition are objectively subject to dispute, and thus these four petitioning creditors lack standing to pursue an involuntary petition under section 303(b)(1) of the Bankruptcy Code. Accordingly, on this basis alone, an immediate dismissal of this case is proper, appropriate and necessary pursuant to Fed.R.Civ.P. 12(b)(1).[7]

### B.     The Court Should Abstain From Exercising Its Jurisdiction

27.     Nevertheless, even if all petitioning creditors have bona fide claims and standing to file the involuntary petition, the interests of the debtor and all legitimate creditors would be better served if the Court exercised its discretion under section 305(a)(1) of the Bankruptcy Code, 11 U.S.C. § 305(a)(1), and either abstained from exercising its jurisdiction, or suspended all proceedings and allowed the state court receivership action to proceed.

---

[7]  A motion to dismiss for lack of standing is properly brought pursuant to Fed.R.Civ.P. 12(b)(1) because standing is a jurisdictional matter. *Ballentine v. U.S.,* 486 F.3d 806, 810 (3d Cir. 2007); *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Company,* 436 F.3d 82, 88 (2d Cir. 2006); *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 362 (1st Cir. 2001).

28.     Section 305(a) of the Code grants significant discretion to bankruptcy courts to

decline to exercise jurisdiction over a case, particularly an involuntary case, where it would be in

the best interests of the debtor and legitimate creditors to abstain from jurisdiction.

Section 305(a) expressly provides that:

> "the court, after notice and a hearing, may dismiss a case under this title, or
> suspend all proceedings in a case under this title, at any time if -
> (1) the interest of creditors and the debtor would be better served by such
> dismissal or suspension";

Under section 305(c), appellate review of a bankruptcy court's decision to grant dismissal or to

suspend proceedings is severely limited, with no review permitted by the courts of appeal.

29.     In determining whether dismissal or a suspension of proceedings pursuant to

section 305(a) is appropriate, courts have looked to a number of factors:

> Such factors generally include: (1) economy and efficiency of administration;
> (2) whether another forum is available to protect the interests of both parties or
> there is already a pending proceeding in state court; (3) whether federal
> proceedings are necessary to reach a just and equitable solution; (4) whether there
> is an alternative means of achieving the equitable distribution of assets;
> (5) whether the debtors and creditors are able to work out a less expensive out-of-
> court arrangement which better serves all interests in the case; (6) whether a non-
> federal insolvency has proceeded so far in those proceedings that it would be
> costly and time-consuming to start afresh with the federal bankruptcy process; and
> (7) the purpose for which bankruptcy jurisdiction was sought.

*In re Fax Station, Inc.,* 118 B.R. 176, 177 (Bankr. D.R.I. 1990); *see also In re Mazzacone*, 200

B.R. 568, 575 (Bankr. E.D. Pa. 1996).

30.     Abstention under section 305(a) has been used by bankruptcy courts in cases very

similar to this.  For example, in *In re Westerleigh Development Corp.*, 141 B.R. 38 (Bankr.

S.D.N.Y. 1992) the court dismissed an involuntary petition under section 305(a)(1) because

(i) the petition reflected a two-party dispute involving the debtor's sole real property asset, which

was already the subject of two pending state court actions; (ii) the debtor's business was

paralyzed and there was nothing to be reorganized; and (iii) the petitioner was proposing a liquidation but filed a chapter 11, as opposed to a chapter 7, because it would be harder to maintain the automatic stay against a chapter 7 trustee in bankruptcy. *Id.* at 40-41.

31.     As this Court is already aware, there is an ongoing dispute and deadlock between the two members of DB Capital.  DiVenere and Funk, through their limited partnership DB Development, the Class B member of DB Capital, clearly want DiVenere to continue to manage DB Capital as he will continue to serve their collective and self-centered interests.  DiVenenre and Funk have gone to extremes to resist any attempt by Aspen HH to have a court-appointed receiver assume managerial control of DB Capital.  As a result, DB Capital remains adrift with two warring factions and no one in authority who is able to make disinterested, unbiased and rational decisions for the company.

32.     DB Capital itself only has two assets, its membership interests in DB Land and LCH, LLC.  LCH, LLC has no assets and all of DB Capital's assets are fully encumbered.  Under any credible scenario, the value of the real estate owned by DB Land, which consists of a completed and partially sold 9-unit fractional ownership condominium building, and a second unfinished, abandoned and blighted 10-unit condominium building located in downtown Aspen, is far less than WestLB's $56 million loan balance.  DB Capital has not actively engaged in business for over a year and a half, has no employees, has consummated no sales in more than eighteen months, and is completely defunct.  There is no realistic possibility of reorganizing the company and no need to continue its existence through a bankruptcy proceeding.

33.     On the other hand, there is a very real possibility that a prompt resolution can be reached outside a bankruptcy setting with DB Capital's secured lender, WestLB, which would

provide legitimate creditors of DB Capital some hope of a recovery.  WestLB has supported

Aspen HH's efforts in the Pitkin County proceedings to have an independent, unbiased, and

disinterested third-party assume control of DB Capital and its affiliated companies.  WestLB has

also indicated a continuing willingness to negotiate outside of a bankruptcy proceeding a

resolution which would allow it to promptly obtain title to the real estate and other assets which

are encumbered by its liens, in exchange for funds which could be used to pay DB Capital's

legitimate creditor claims.  This resolution can only be achieved promptly and inexpensively

through the pending state court proceedings, and the appointment by Judge Nichols of an

independent receiver subject to her jurisdiction who will have the authority to negotiate with

WestLB and the responsibility to act in the best interest of all parties, including all legitimate

creditors of DB Capital.  Aspen HH supports and has been actively seeking this result for

months.  DiVenere and his affiliates, for their own selfish self-interests, vigorously oppose it.

     34.     Under these circumstances, no purpose will be served by this Court's assumption

of jurisdiction.  Abstaining from the exercise of that jurisdiction will not prejudice any creditor.

Indeed, by allowing the state court proceedings to proceed, it is very likely that (i) an independent

third-party will be appointed as receiver for DB Capital, (ii) the receiver will be empowered,

subject to the jurisdiction of the state court, to make decisions in the best interests of all

interested parties in DB Capital, not just DiVenere and his affiliates, (iii) an agreement will be

reached, promptly and inexpensively, with WestLB which will provide some recovery for DB

Capital's legitimate creditors; and (iv) there will be no need for the exercise of federal

jurisdiction to achieve a fair and equitable resolution of this matter.  On the other hand, allowing

this case to proceed will only result in further delay and expense for all parties, with absolutely

no benefit to creditors, equity holders, or anyone else. For this reason, an immediate dismissal or suspension of proceedings in this case pursuant to section 305(a)(1) would better serve the interests of the debtor and its legitimate creditors.

### C. This Action Should Also Be Dismissed Because It Was Filed In Collusion With DiVenere and In Bad Faith

35. In addition to not being filed by the requisite number of creditors with qualifying claims, and not being in the best interest of the debtor and its legitimate creditors, this action is improper and should be dismissed pursuant to section 1112(b)(1) of the Bankruptcy Code, 11 U.S.C. § 1112(b)(1), because it was commenced in bad faith and collusion with DiVenere.

36. As discussed above, on May 27, 2010, DiVenere caused a voluntary chapter 11 petition to be filed on behalf of DB Capital. Earlier that same day, Judge Nichols entered an Order in the Pitkin County proceedings enjoining any further attempts by DiVenere and his counsel from absconding with the books and records of DB Capital, and scheduling an evidentiary hearing on Aspen HH's request for the appointment of a receiver, based in part on DiVenere's misconduct.

37. Aspen HH promptly moved to dismiss DiVenere's voluntary petition on the grounds that DiVenere did not have the authority to file it and it was filed in bad faith. On Monday, June 21, 2010, this Court granted Aspen HH's motion to dismiss.

38. On Tuesday, June 22, 2010, counsel for Aspen HH notified Judge Nichols' chambers that this Court had dismissed the chapter 11 case filed by DiVenere, and requested that a status hearing be set in order to schedule the evidentiary hearing on Aspen HH's motion to appoint a receiver for DB Capital and its subsidiary entities. Judge Nichols scheduled a telephonic status conference hearing for that Friday, June 25, 2010, at 9:30 a.m.

39.     On Thursday, June 24, 2010, at 4:09 p.m., only three days after this Court dismissed the voluntary chapter 11 case filed by DiVenere, and on the eve of the status conference in the Pitkin County proceedings, the petitioning creditors filed their involuntary petition.  As a result of the filing, the status conference with Judge Nichols was cancelled, and no evidentiary hearing was set.

40.     Under Bankruptcy Code section 1112(b), a chapter 11 case may be dismissed "if the movant establishes cause."  There are a number of grounds that constitute "cause" identified in section 1112(b)(4), including a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  However, as most courts recognize, the list of grounds in section 1112(b)(4) is not intended to be exhaustive.  *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986); *In re Pacific Rim Investments*, LLP, 243 B.R. 768, 772 (Bankr. D. Colo. 2000).

41.     One of the commonly recognized grounds for dismissal under section 1112(b) not listed in the Code is "bad faith."  As explained in Collier's:

> In addition to the listed grounds for dismissal, courts enforce a "good faith" prerequisite to bankruptcy filings generally, and apply equitable principals in analyzing the dismissal of a case.  Such principles may include halting a debtor's intended abuse of the judicial process and the purposes of the reorganization provision, limiting the equitable remedies of the Code to debtors and creditors with "clean hands," exercising the court's inherent power to dismiss collusive, sham or frivolous suits, and impeding debtors from avoiding trial of issues as framed in state court and to avoid state court sanctions.  A dismissal for lack of good faith also is appropriate where there is no realistic possibility of an effective reorganization, and it is clear that the petitioner merely sought to delay or frustrate legitimate efforts of secured creditors to enforce their rights.

1 Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual ¶ 301.12[3] (Matthew Bender, 3rd ed. rev.)

42.     The good faith standard focuses directly on the subjective intentions for the filing and proper use of the bankruptcy courts as a general system of equity, and is designed to prevent the "abuse of the bankruptcy process, or the rights of others." *In re Victory Constr. Co.*, 9 B.R. 549, 559 (Bankr. C.D. Calif. 1981).  Because the issue of good faith focuses on subjective intent, it has been generally recognized that:

> . . . the facts surrounding good faith will be determined by circumstantial evidence.  It is unlikely the debtor will ever acknowledge its own bad faith; therefore one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case.

*In re Roxy Real Estate Co.*, 170 B.R. 571, 573 (Bankr. E.D. Pa. 1993).

43.     Where there is no realistic possibility of an effective reorganization, a dismissal for lack of good faith is permissible.  *See, e.g., C-TC 9th Ave. Partnership v. Norton Co.*, 113 F.3d 1304, 1310 (2d Cir. 1997) (chapter 11 petition "frivolous" where "debtor had no reasonable probability of emerging from bankruptcy proceeding and no realistic chance of reorganizing . . . ."); *Carolin Corp v. Miller*, 866 F.2d 693, 698-99 (4th Cir. 1989) (dismissal appropriate when there is "the manifest absence of a 'reasonable likelihood of rehabilitation,' [or] the debtor's apparent 'inability to effectuate [a plan of reorganization] . . . ."); *In re Albany Partners*, 749 F.2d 670, 674 (11th Cir. 1984) ("Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate.")

44.     In this case, a mere three days after this Court dismissed DiVenere's voluntary chapter 11 petition, several creditors, most with dubious claims, filed a involuntary chapter 11 petition seeking to perpetuate DiVenere's control of the debtor.  However, DB Capital has no

directly or indirectly held unencumbered assets and there is no equity that may be realized for the benefit of any creditors. As DiVenere's List of Creditors acknowledges, DB Capital is indebted to WestLB for more than $56 million, and its total indebtedness exceeds $60 million. DB Capital has no business and all of its assets are subject to a state court receivership. With listed debts exceeding $60 million, no assets, no employees, and no viable prospects, the suggestion that the Project can be saved, and DB Capital rehabilitated, is frivolous and absurd. On this basis alone, this case should be dismissed pursuant to section 1112(b).

45.     Dismissal of an involuntary petition pursuant to section 1112(b) is also appropriate where it appears that the petition was filed for the purpose of avoiding state court proceedings. *See In re ABO-MCB Joint Venture*, 153 B.R. 338, 341 (Bankr. D.N.M. 1993) (dismissal of involuntary petition is proper where the petitioning party uses the bankruptcy process in bad faith and "solely for the purpose of moving state court litigation to [the bankruptcy forum]."); *In re A&T Partnership*, 192 B.R. 900, 902-903 (Bankr. S.D. Ohio 1996) (same); *Matter of WinSum Sports, Inc.*, 14 B.R. 389 (Bankr. D. Conn. 1981); *In re Beacon Reef Limited Partnership*, 43 B.R. 644 (Bankr. S.D. Fla. 1984)(same).

46.     It was not a mere coincidence that this involuntary case was commenced on the eve of the parties' status conference with Judge Nichols which was scheduled immediately following the dismissal of DiVenere's wrongful voluntary chapter 11 case. DiVenere's improper voluntary petition was also filed to avoid further state court proceedings and an injunction which had been entered by Judge Nichols just hours before. It is obvious that neither DiVenere, Funk nor Dennis want the state court to conduct an evidentiary hearing that will expose their

misconduct.  Filing the involuntary petition is only the latest attempt to delay or avoid such a hearing.

47.     An involuntary petition may also be dismissed for "bad faith" under section 1112(b) where there has been collusion between the petitioning creditors and the debtor's representatives.  This is particularly true in a situation such as this where the debtor's representative seeks to circumvent a limitation which precludes the debtor from filing a voluntary petition.

48.     For example, in *In re Global Ship Systems, LLC*, 391 B.R. 193 (Bankr. S.D. Ga. 2007), the court dismissed an involuntary petition orchestrated by the debtor's representative on a finding of bad faith under section 1112(b).  The court held that because "the petitioning creditors' participation in [the] case was solicited by the Debtor which was prohibited by the Operating Agreement from filing a voluntary case" without the consent of the secured creditor, who was also a equity holder, the so-called involuntary case was "the functional equivalent of a voluntary chapter 11, and Debtor's acts in orchestrating the filing are relevant." *Id.* at 202.  The court applied the traditional bad faith factors (as articulated by the 11th Circuit) and found that dismissal was appropriate because: (i) the case was filed only hours before a scheduled non-judicial foreclosure under state law, (ii) the petition was filed only after a prior effort to enjoin the state-law foreclosure failed and the state court litigation remained pending, (iii) the debtor had no employees and no operating business and owned only a single parcel of real estate which provided the debtor's sole source of revenue (through lease payments), (iv) the debtor never had many employees and at the date of the petition had no employees and no cash with which to fund expenses, (v) the debtor had initially asserted that it had fewer than 12 creditors and even when it

later asserted that it had more than 240 creditors, their claims were dwarfed by the secured creditor/equity holder's very large claim, and (vi) the timing of the filing of the petition shortly after the state court denied the debtor's request for a restraining order preventing the foreclosure evidenced an intent to delay or frustrate the secured creditor's legitimate efforts to enforce its rights. *Id.* at 202-03. The court then pointed to additional factors demonstrating bad faith, including the fact that the involuntary petition was "a pure subterfuge for a voluntary petition, filed by creditors at the instigation of [the debtor] or its managers/members." *Id.* 203.

49.     In *In re Winn*, 49 B.R. 237 (Bankr. M.D. Fla. 1985), the court found that the involuntary petition had been conceived by the debtor and that it was the debtor, and not the petitioning creditors, who had sought to invoke the jurisdiction of the bankruptcy court. *Id.* at 239. The petition had been prepared by the debtor and signed by the three petitioning creditors at the debtor's request, after his voluntary petition was dismissed as having been filed in bad faith. *Id.* The court held that even though it was an involuntary case, it was still appropriate for the court to inquire into the presence or absence of good faith of the debtor, "especially to the extent of his involvement and his role in the institution of the involuntary case." *Id.* The court reasoned that "regardless of the nature of the petition, whether it is voluntary or involuntary, the Court must protect the integrity of its jurisdiction and when the issue is raised, it is proper for the Court to inquire to what extent the Debtor is involved in the institution of an involuntary case and if it appears there was collusion between the Debtor and the petition creditors, and they fraudulently invoked the jurisdiction of the Court, the Court will not tolerate the maintenance of an involuntary petition." *Id.* Although in *Winn* the court found that there was no actual collusion between the debtor and the petitioning creditors, the court found that the debtor pursued the

involuntary in an attempt to do indirectly what he could not do directly, namely maintain a chapter 11 petition so as to delay and frustrate his judgment creditor's enforcement of its judgment against him. *Id.* at 239-40. Accordingly, the court dismissed the case as having been filed in bad faith.

50.     Finally, in *In re G-2 Realty Trust*, 6 B.R. 549 (Bankr. D. Mass. 1980), following the commencement of foreclosure proceedings by its secured creditor, the eventual debtor-trust amended its declaration of trust to become a business trust, and thus eligible to be a debtor. Less than a month later, the trust's unsecured creditors filed an involuntary petition against it. *Id.* at 551. The secured creditor filed a motion to dismiss the proceedings on the ground that the involuntary petition was the result of collusion between the debtor and the petitioning creditors and was therefore filed in bad faith. *Id.* at 550. The bankruptcy court found that there was insufficient evidence to demonstrate collusion. Nonetheless the court went on to consider the debtor's prepetition conduct (changing the form of the trust) to determine whether the case had been filed in bad faith. *Id.* at 551. The court rejected an argument urged by the petitioning creditors that because the proceeding was initiated by an involuntary petition, the debtor's good or bad faith was irrelevant. *Id.* at 552-53. Instead, the court held: "Regardless of the nature of the petition filed, the Court, in order to protect its jurisdictional integrity, must satisfy itself that any debtor appearing before it is properly within the contemplation of the Bankruptcy Code." *Id.* at 553. The court noted that if the filing of an involuntary insulated a debtor from an examination into its good faith or lack thereof, such a rule would encourage collusion between "debtors seeking to fraudulently procure the jurisdiction of the bankruptcy court . . . and friendly creditors." *Id.*

51.     The timing and circumstances under which this involuntary case was commenced certainly suggest bad faith collusion between the petitioning creditors and DiVenere who still serves as the de facto manager of DB Capital.  Indeed, two of the petitioning creditors, Funk and Dennis, are friends and associates of DiVenere, and have been actively supporting his efforts to retain control of DB Capital.  Nonetheless, as the foregoing cases make clear, even in the absence of direct evidence of collusion, this Court may, and should, examine the circumstances surrounding the filing of this case, and if there is a basis for finding bad faith, may dismiss the case, even if the motives of the petitioning creditors were pure.

52.     In sum, this case involves a classic example of a bad faith bankruptcy filing and abuse of the bankruptcy process.  This case was filed as a chapter 11 proceeding even though there is absolutely no possibility that DB Capital can be reorganized.  It was filed to perpetuate DiVenere's de facto control of DB Capital, within days after his efforts to place DB Capital in a voluntary chapter 11 bankruptcy were summarily rejected by this Court.  The case was commenced by creditors holding questionable claims, on the eve of a state court status conference during which the state court would once again schedule an evidentiary hearing on Aspen HH's motion to have an independent third-party receiver appointed to take control of DB Capital, an outcome which DiVenere and his associates desperately want to avoid.  Finally, there is substantial evidence of collusion between DiVenere and the petitioning creditors to engineer a filing which would circumvent the DB Capital Operating Agreement which precludes such an action.  Under these circumstance, an immediate dismissal of this case would be proper, appropriate and necessary under section 1112(b) of the Bankruptcy Code, and Aspen HH respectfully requests the Court enter such a dismissal order as soon as reasonably practicable.

WHEREFORE, for the foregoing reasons, Aspen HH respectfully requests that the Court dismiss this case as soon as reasonably practicable, and award Aspen HH, pursuant to section 303(i), 11 U.S.C. § 303(i), its attorneys' fees and costs incurred in obtaining the dismissal.

Dated:  July 8, 2010.

FAEGRE & BENSON LLP

By: _____ s/ Lawrence Bass _____
  Lawrence Bass (#29702)
  3200 Wells Fargo Center
  1700 Lincoln Street
  Denver, CO 80203-4532
  Telephone: (303) 607-3500
  Facsimile: (303) 607-3600
  E-Mail: lbass@faegre.com

NISEN & ELLIOTT

By:_____ s/ Michael H. Moirano _____
  Michael H. Moirano, Esq.
  200 West Adams, Suite 2500
  Chicago, IL 60602
  Telephone: (312) 346-7800
  Facsimile: (312) 346-9316
  E-Mail: mmoirano@nisen.com

*Attorneys for Aspen HH Ventures, LLC*

CERTIFICATE OF SERVICE

This is to certify that on this 8th day of July, 2010, a true and correct copy of MOTION TO DISMISS OR SUSPEND PROCEEDINGS IN THIS INVOLUNTARY CASE COMMENCED BY CREDITORS WITH DISPUTED CLAIMS AND IN BAD FAITH was served via overnight delivery, addressed to the parties identified below.

DB Capital Holdings, LLC
201 N. Main Street, Suite 203
Aspen, CO 81611

Jeffrey S. Brinen, Esq.
303 E. 17th Ave., Suite 500
Denver, CO 80203

Robert Padjen, Esq.
Laufer and Padjen LLC
5290 DTC Parkway, Suite 150
Englewood, CO 80111

Heidi J. Sorvino, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
1999 Water Street, 25th Floor
New York, NY 10038

William Dennis
10302 Deerwood Park Blvd.
Jacksonville, FL 32256

Fred Funk
24579 Harbourview Drive
Ponte Vedra, FL 32082

Realty Financial Resources, Inc.
Attn: George David
1441 Stockton Street
St. Helena, CA 94574

O'Bryan Partnership, Inc.
Attn: Ken A. O'Bryan
P.O. Box 2773
620 Main Street, Unit 8
Frisco, CO 80443

United States Trustee
999 18th Street, Suite 1551
Denver, CO 80202

Richard W. Havel, Esq.
William D. Ellis, Esq.
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA 90013

and by United States mail, postage prepaid thereon, addressed to:

G.D.B.S. at Snowmass, Inc.
Attn: Andrew W. Light
P.O. Box 620
Basalt, CO 81621

/s/ Carole L. Wilds
_____

fb.us.5397652.02