IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>DB CAPITAL HOLDINGS, LLC,<br>a Colorado limited liability company,<br><br>Debtor. | Case No. 10-25805-MER<br><br>Chapter 11 (involuntary petition) |

**JOINDER IN ASPEN HH VENTURES, LLC'S CLOSING REMARKS**

WestLB AG, a German banking corporation acting by and through its New York Branch ("WestLB"), by and through the undersigned, hereby joins in the closing remarks of Aspen HH Ventures, LLC ("Aspen HH") in support of Aspen HH's motion to dismiss or suspend proceedings in the above-captioned involuntary proceeding [Docket No. 8]. In support of the joinder, WestLB states as follows:

1.  DB Capital Holdings, LLC ("DB Capital"), the alleged Debtor in this case, has no prospects for reorganization. Substantially all of its assets and the assets of its subsidiaries, Dancing Bear Land, LLC ("DB Land"), and LCH, LLC ("LCH" and, together with DB Capital and DB Land, the "Borrowers"), are encumbered. These assets serve as security for two senior secured loans made by WestLB to the Borrowers in the principal amounts of $53,000,000 and $5,000,000, respectively (collectively, the "Loans"). Of particular significance, WestLB holds first priority deeds of trust on the two parcels of real property (the "Property") in Aspen owned by DB Land.

2.  DB Capital's circumstances make the involuntary petition a classic bad faith filing. DB Capital's only (indirect) asset of any value is the Property, the value of which is far exceeded by the mortgage encumbering it. DB Capital has no ongoing business, no employees, and is paralyzed by the dispute between its two members. It has been unable to sell any of the remaining fractionalized units in the completed condominium building for almost a year. DB Capital has also not made any progress on the skeleton structure of the second building, for more than a year and a half. There are only a handful of unsecured claims, which in aggregate are dwarfed by WestLB's large secured claim. Finally, the timing of the filing of this involuntary proceeding evidences an attempt to frustrate WestLB's legitimate efforts to enforce its rights with respect to the Property. Under these circumstances, and with a state court-appointed

LA1 1883092

receiver properly managing its entirely underwater indirect real estate assets, DB Capital has no purpose in the bankruptcy forum.

3. DB Capital's plan for its reorganization is so ill-conceived that it cannot justify the time and expense of pursuing a chapter 11 case. DB Capital has so mismanaged the development of its condominium project that, according to the receiver, James DeFrancia, the current value of the Property is now substantially less than the amount owed to WestLB on account of the Loans. This mismanagement and devaluing of the Property is the handiwork of Thomas DiVenere, the Debtor's manager. Yet, shortly after his voluntary petition was dismissed by this Court, he orchestrated and induced the filing of this bad faith involuntary proceeding by several unsecured creditors. Mr. DiVenere now proposes a preposterous plan to borrow a further $31 million from uncommitted sources, under uncommitted terms that suggest that the Debtor will grant another lien on the Property ahead of WestLB's mortgage, and discount WestLB's loans significantly. *See, e.g.,* Declaration of Thomas R. DiVenere [Docket No. 38-1] at ¶¶ 41-42. Indeed, the estimated costs to complete only the construction of the skeleton mountain-side building of the Dancing Bear project is approximately $14.1 million. Exs. 17 & 18. That amount, however, is less than half of the total hard costs that Jean Coulter testified could total some $33 million to fully complete the project, including costs for urbanization, furniture/fixtures/equipment, and marketing. Even under Mr. DiVenere's far-fetched plan, the project would, according to Mr. DiVenere's own testimony, take more than four years to complete in even the most optimal market and economic environment.

4. Mr. DiVenere testified that he wants to protect three classes of individuals and entities affiliated with the Dancing Bear project: (i) the equity investors (including himself), (ii) the fractional-unit purchasers, and (iii) the unsecured creditors. Conspicuously absent from Mr. DiVenenere's self-proclaimed protected-class list is WestLB, which has poured over $58 million into the project that Mr. DiVenere initiated but has not come close to completing.

5. As a legal matter, the Debtor has no ability to prime WestLB's already undersecured position, or compel it to take a discount on its claim, on the basis of a vague and speculative plan. Allowing this involuntary preceding to continue, to pursue such a wildly unsupported plan, would impose an unfair burden of time and expense on WestLB and DB Capital's other creditors and amount to a waste of judicial resources. The Court should not abide such a self-serving proposal.

6. Mr. DiVenere's desired proposal would ensure that he will remain in place as the developer of the project. Yet his mismanagement of the project to date has been so demonstrable that the District Court of Pitkin County, Colorado, duly appointed Mr. DeFrancia as receiver after an expedited hearing only three hours after the receivership action was filed. The evidence of mismanagement and unscrupulous behavior presented by Aspen HH in this proceeding demonstrates, without question, that under no circumstances should Mr. DiVenere have any role in the future development of the Property. For instance, Mr. DiVenere has wasted WestLB's and his investors' money by squandering untold hundreds of thousands of dollars to purchase an employee housing unit for his friends to live in, to buy membership in a private-jet club, to join the exclusive Roaring Fork Club, and to pay for his own on-site maid services, groceries, and other goods and services.

7.	Mr. DiVenere's claim that WestLB will be willing to consider his absurd proposal of a priming lien, a discounted mortgage and allowing Mr. DiVenere to remain in place as the developer is unfounded and lacks any evidentiary support. Mr. DiVenere points to WestLB's formation of a so-called "bad bank" to hold non-performing assets and alleges that this institution accepts steep discounts on its loans, regardless of the terms. This is simply untrue, despite Mr. DiVenere's under-oath representations to the contrary.

8.	WestLB's position has been consistent throughout its negotiations with DB Capital, the voluntary chapter 11 petition that preceded the instant involuntary petition, and this proceeding. WestLB wants to acquire title to its collateral so that it can attempt to optimize the recovery of its principal. The state court real property receivership and proposed equity receivership for DB Capital itself should address the claims of DB Capital's legitimate creditors. WestLB is available to consider a contribution in the receivership to facilitate a prompt disposition of the project and provide a potential distribution therein to the bona fide creditors, in exchange for a deed-in-lieu of foreclosure. An order for relief would, at this point, disrupt the progress that has already been made in the current state court proceeding, derail any benefit to creditors available in the proposed equity receivership for DB Capital, and hand the management of the Property back to Mr. DiVenere, who has already demonstrated that he is incapable of carrying out that role effectively and responsibly.

9.	Mr. DiVenere's agenda is clear. He wants to secure for himself a job for the next four-plus years that would enable him to draw a handsome paycheck and continue his lavish lifestyle at the expense of DB Capital's creditors. Mr. DiVenere's delusional plan is unfair to creditors, is not feasible, will delay the eventual completion and construction of the unfinished building currently blighting downtown Aspen, and will not be supported by WestLB.

10.	For all of these reasons, and for the reasons set forth in Aspen HH's underlying motion to dismiss and closing remarks, as well as WestLB's initial joinder to the motion to dismiss, WestLB respectfully submits that this Court should dismiss the instant proceeding and allow DB Capital's legitimate creditors to pursue their rights through the state-court receivership.

Dated: September 27, 2010

Respectfully submitted,

By:   s/Christopher D. Bryan
Matthew C. Ferguson (# 25687)
Christopher D. Bryan (#35522)
GARFIELD & HECHT, P.C.
601 East Hyman Avenue
Aspen, CO  81611
Telephone:  (970) 925-1936
Facsimile:   (970) 925-3008
Email:  ferguson@garfieldhecht.com
           cbryan@garfieldhecht.com

*Local Counsel for WestLB AG*

LA1 1883092

        Richard W. Havel
        Ariella T. Simonds
        SIDLEY AUSTIN LLP
        555 West 5th Street, Suite 4000
        Los Angeles, CA  90013
        Telephone:  (213) 896-6000
        Facsimile:   (213) 896-6600
        Email:  rhavel@sidley.com
                  asimonds@sidley.com

        *Counsel for WestLB AG*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September 2010, a true and correct copy of the foregoing **JOINDER IN ASPEN HH VENTURES, LLC'S CLOSING REMARKS** was served *via* United States Mail, first-class postage pre-paid thereon, and addressed to the parties identified below:

DB Capital Holdings, LLC
201 N. Main Street, Suite 203
Aspen, CO 81611

Jeffrey S. Brinen, Esq.
Kutner Miller Brinen, P.C.
303 E. 17th Ave., Suite 500
Denver, CO 80203

Robert Padjen, Esq.
Laufer and Padjen LLC
5290 DTC Parkway, Suite 150
Englewood, CO 80111

Heidi J. Sorvino, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
1999 Water Street, 25th Floor
New York, NY 10038

G.D.B.S. at Snowmass, Inc.
Attn.: Andrew W. Light
P.O. Box 620
Basalt, CO 81621

William Dennis
10302 Deerwood Park Blvd.
Jacksonville, FL 32256

Fred Funk
24579 Harbourview Drive
Ponte Vedra, FL 32082

Realty Financial Resources, Inc.
Attn.: George David
1441 Stockton Street
St. Helena, CA 94574

O'Bryan Partnership, Inc.
Attn.: Ken A. O'Bryan
P.O. Box 2773
620 Main Street, Unit 8
Frisco, CO 80443

United States Trustee
999 18th Street, Suite 1551
Denver, CO 80202

| | |
|---|---|
| Lawrence Bass, Esq.<br>Faegre & Benson LLP<br>3200 Wells Fargo Center<br>1700 Lincoln Street<br>Denver, CO 80203-4532 | Michael H. Moirano, Esq.<br>Nisen & Elliott, LLC<br>200 West Adams, Suite 2500<br>Chicago, IL 60606 |
| Richard Havel, Esq.<br>Ariella Thal Simonds, Esq.<br>Sidley Austin LLP<br>555 West Fifth Street, Ste. 4000<br>Los Angeles, CA 90013 | |

                                                __s/Kathy Thissen_____
                                                Kathy Thissen

LA1 1883092