# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>DB CAPITAL HOLDINGS, LLC<br>        DEBTOR.<br><br>_____<br><br>WESTLB AG,<br>        Movant,<br>v.<br>DB CAPITAL HOLDINGS, LLC,<br>        Respondent. | CASE NO. 10-25805-MER<br><br>CHAPTER 11 (involuntary petition) |

**WESTLB AG'S MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

      WestLB AG ("WestLB"), by and through its undersigned counsel and on behalf of its wholly owned subsidiaries, Tanzbar DB Holdings, LLC and Tanzbar CH Holdings, LLC, hereby files its *Motion for an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (the "Motion"). WestLB filed a similar motion for relief from the automatic stay in the case of *In re Dancing Bear Land, LLC* (Case No. 10-39584-MER) [Docket No. 40] on January 7, 2011, and a similar motion in the case of *In re Dancing Bear Development, LP* (Case No. 10-36493-MER) concurrently herewith. The motion for relief from stay filed against Dancing Bear Land, LLC ("DB Land") is herein referred to as the "DB Land Motion for Relief." In the interest of judicial economy, the DB Land Motion for Relief is relied on throughout this motion and efforts have been made to incorporate it herein without needlessly repeating the recitations and arguments contained therein.[1] In further support of this Motion, WestLB submits

---

[1] Capitalized terms not otherwise defined herein are defined in accordance with the DB Land Motion for Relief.

LA1 1957175

the Declaration of Christian Ruehmer ("Ruehmer Decl."), the Declaration of Christopher Bryan, the Declaration of Christopher Donaldson, and the Declaration of Jean Coulter, each filed in support of the DB Land Motion for Relief and attached to the concurrently filed Request for Judicial Notice ("RJN"), and respectfully states as follows:

I. **INTRODUCTION**

1. DB Capital Holdings, LLC ("DB Capital") is a holding company that owns 100% of the equity in DB Land. DB Land is a single asset real estate debtor that owns the real property and improvements (collectively, the "Real Property") associated with a luxury fractional interest residence club in Aspen, Colorado (the "Project"). DB Land is insolvent, and the Real Property is fully encumbered by valid first priority perfected liens in favor of WestLB. *See* Ruehmer Decl., Exhs. C, D, E, F, G, & H. Consequently, DB Land has no equity in its assets, and DB Capital's equity in DB Land (the "Membership Interest") has no present value. In addition, the Membership Interest, like the Real Property, is fully encumbered by first priority perfected liens in favor of WestLB. *See* Ruehmer Decl., Exhs. I & J. WestLB's liens on the Real Property and the Membership Interest secure indebtedness currently exceeding $63,990,857.91.[2]

2. WestLB has already made substantial economic and other concessions to DB Capital in a good faith effort to support DB Capital's multiple attempts at restructuring its debt outside of court. Only a negotiated forbearance, several other substantial concessions by WestLB, and the collapse of negotiations did WestLB pursue in earnest remedies against its collateral. On March 5, 2010, WestLB acted pursuant to control agreements governing the Sales Accounts maintained by DB Capital and DB Land with Community Banks and directed

---

[2] As of January 7, 2011, principal and accrued interest of $63,990,857.91 is due and owing to Tanzbar DB Holdings, LLC and Tanzbar CH Holdings, LLC, from DB Capital (and its fellow borrower party DB Land) and the state-court appointed receiver, Weston Capital Corporation. This figure includes the principal indebtedness and interest accrued under the senior and junior construction loans from WestLB and three of the four receivership certificates issued by the receiver (the fourth certificate, though authorized by the state court, has not yet been funded). The amount of indebtedness is exclusive of fees and costs incurred or advanced by WestLB for which it is entitled to reimbursement under the applicable loan documents. *See* Ruehmer Decl., ¶ 25.

Community Banks to release the funds in the Sales Accounts into WestLB's possession.[3] On March 12, 2010, WestLB secured the appointment of a receiver over the Project. WestLB also commenced foreclosure proceedings against the Real Property under Colorado law. The foreclosure sale for the Real Property was scheduled for November 24, 2010. DB Land filed for bankruptcy one day prior to the scheduled sale for the apparent purpose of delaying WestLB's valid exercise of its state law remedies.

3. This Motion seeks to enforce WestLB's contractual entitlement to relief from stay and its entitlement to relief from stay under the Bankruptcy Code. This Court should grant the Motion and lift the automatic stay to: (i) permit WestLB to foreclose on its liens on the Membership Interest; and (ii) permit WestLB to enforce its rights with respect to the funds currently held in the Sales Accounts.[4] The Motion should be granted for the reasons discussed below, including: (i) DB Capital has waived any right to enforce the automatic stay against WestLB as part of an enforceable waiver made in exchange for WestLB's pre-petition forbearance; and (ii) DB Capital has no equity in the Membership Interest and neither DB Capital nor its subsidiary, DB Land, has or can propose a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.

## II. JURISDICTION AND VENUE

4. On May 27, 2010, DB Capital filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On June 21, 2010, DB Capital's petition was dismissed. Three days later, an involuntary petition was filed against DB Capital Holdings, and an Order for Relief was entered on November 29, 2010. DB Capital is currently a

---

[3] The funds in the Sales Accounts and WestLB's instructions to Community Banks are now the subject of an interpleader complaint filed by Community Banks with the District Court of Pitkin County, Colorado (the "Interpleader Action"). The Interpleader Action has been stayed as a result of the chapter 11 petitions filed for DB Land and DB Capital.

[4] WestLB believes that the funds in the Sales Accounts are the proceeds of sales of fractional interests in the Real Property that, if not for WestLB's current right to the funds, would be property of DB Land. However, because the Interpleader Action names both DB Land and DB Capital as defendants, and out of an abundance of caution, WestLB seeks relief from stay in DB Capital's chapter 11 case to the extent DB Capital has any interest in or claim to the funds held in the Sales Accounts.

3

debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

5. This Court has jurisdiction to hear and determine this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

6. The statutory predicate for the relief requested herein is section 362 of the Bankruptcy Code.

### III. FACTUAL BACKGROUND

7. For a thorough discussion of the factual background of DB Capital, DB Land, the Project, the Loans and the current valuation of the Project, please see the DB Land Motion for Relief. Section III of the DB Land Motion for Relief entitled "FACTUAL BACKGROUND" is incorporated herein by reference. A further discussion of WestLB's various security interests, including its liens on the Membership Interest can be found in the Ruehmer Declaration.

### IV. LEGAL ARGUMENT

**A. In Exchange for WestLB's Substantial Concessions to DB Capital During Their Out-of-Court Workout, DB Capital Agreed Prospectively to Waive the Automatic Stay.**

8. WestLB is entitled to relief from stay for cause because DB Land, DB Capital, and each of the other Borrower parties, validly consented to relief from stay in exchange for receiving substantial financial concessions from WestLB as part of a workout. Although DB Land and DB Capital had breached the Loan Agreements and several Events of Default had occurred, WestLB agreed, after extensive negotiations, to forbear from exercising remedies against its collateral—the Real Property and the Membership, among other things. The parties entered into the Loan Amendments, which provided DB Land with an extension of the deadline to complete the Project and an additional $11,964,331 in funds with which to pay incurred and future costs of construction—including to its general contractor. *See* Ruehmer Decl. Exhs. FF & GG, §§ 3.1(b), 3.4 thereto. In exchange for these critical concessions, DB Capital and DB Land explicitly consented to relief from stay for WestLB in the event of either of their bankruptcies and committed not to contest any motion by WestLB seeking such relief. *See* Ruehmer Decl.,

4

Exhs. FF & GG, § 6.1(f)(i) thereto. Those commitments are binding and compel the relief sought in this Motion. Due to DB Capital's explicit waiver of the benefits of the automatic stay in consideration for an extensive forbearance from WestLB, this Motion should be granted and the stay lifted.[5]

### B. This Court Must Grant WestLB Relief From Stay Because DB Capital Has No Equity in the Membership Interest and the Membership Interest Is Not Necessary for an Effective Reorganization.

9. Section 362(d)(2) of the Bankruptcy Code compels relief from the automatic stay with respect to the Membership Interest if (A) the debtor does not have any equity in the asset and (B) the asset is not necessary for an effective reorganization. WestLB must establish that DB Capital has no equity in the Membership Interest. 11 U.S.C. § 362(g). WestLB has met this burden. DB Capital now bears the burden of proving by a preponderance of the evidence that the Membership Interest is necessary to an effective reorganization. *Massachusetts Mut. Life Ins. Co. v. Shady Grove Tech Ctr. Assocs. Ltd. P'ship (In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship)*, 227 B.R. 422, 426 (Bankr. D. Md. 1998). DB Capital cannot meet this heavy burden.

#### 1. DB Capital Has No Equity in the Membership Interest.

10. For purposes of section 362(d)(2), a debtor has no equity in an asset when the debts secured by liens on that asset exceed its value. *In re Indian Palms Ass'n, Ltd.*, 61 F.3d 197 (3d Cir. 1995). As further described in section III.H. of the DB Land Motion for Relief, the entire Project is valued at approximately $37.3 million, WestLB's claim is over $63.9 million, leaving WestLB undersecured as to the Real Property by approximately $26.6 million.[6] *See*

---

[5] For an extensive discussion of the legal argument supporting relief from the automatic stay on the basis of DB Capital's waiver, WestLB hereby incorporates by reference the arguments contained in Section IV.A. of the DB Land Motion for Relief and subsections IV.A.1, 2, 4 and 5 thereof. Subsection IV.A.3 and 6 do not apply as they relate to DB Land's unique status as (i) only having one creditor – WestLB, and (ii) a single asset real estate debtor. However, WestLB's status as DB Capital's largest creditor by an order of magnitude means that the third factor typically considered in respect of prepetition waivers of the automatic stay also weighs in favor of enforcing DB Capital's waiver. *In re Club Tower L.P.*, 138 B.R. 307, 312 (Bankr. N.D. Ga. 1991) (enforcing a prepetition agreement not to contest stay relief where debtor had only a few unsecured creditors whose claims were dwarfed by the secured claim of the party seeking relief).

[6] In addition to the value of the Project, WestLB also retains a first priority perfected security interest in the approximately $2.5 million in the Sales Accounts. When WestLB's liens are validated and the Interpleader Action

Donaldson Decl., ¶ 8. Consequently, not only does DB Capital not have any equity in the Membership Interest, but the Membership Interest has no current value. WestLB has established that DB Land has no equity in the Real Property.

### 2. The Membership Interest Is Not Necessary for an Effective Reorganization Because DB Capital Has No Realistic Prospects for a Successful Reorganization.

11. Because DB Capital has no equity in the Membership Interest, it bears the burden of proving by a preponderance of the evidence that the Membership Interest is "necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(B). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76 (1988) (citations omitted and emphasis in original). Moreover, "[i]f the plan proposed cannot meet confirmation standards, it cannot form the basis for finding there to be a reasonable possibility of a successful reorganization as required by 11 U.S.C. § 362(d)(2)." *Steele v. Cho* (*In re Cho*), 164 B.R. 730, 733 (Bankr. E.D. Va. 1994). Even before a debtor has formally proposed a plan and "even within the exclusivity period set forth under 11 U.S.C. § 1121(b), lack of any realistic prospect of effective reorganization requires relief from stay under 11 U.S.C. § 362(d)(2)." *Shady Grove*, 227 B.R. at 426.

12. DB Capital has no reorganization "in prospect" and has no "reasonable possibility of a successful reorganization within a reasonable time." *Id.* DB Land's and DB Capital's restructuring plan[7] is to sell Phase I fractional interests (WestLB's most valuable collateral) to

---

is resolved in WestLB's favor, the funds in the Sales Accounts shall increase the amount of WestLB's secured claim.

[7] On December 17, 2010, DB Capital filed a motion (the "Priming Motion") for authority to incur postpetition secured financing senior to WestLB (the "DIP Loan") that outlined a plan to restructure DB Capital and DB Land's debt and complete the Project. [[10-25805-MER, Docket No. 112.] Counsel for WestLB has been informed by counsel for DB Capital and DB Land that DB Capital intends to withdraw the Priming Motion and file a new, similar motion seeking financing from another lender. WestLB is informed and believes that the new motion, like the original motion, will seek authority to incur secured financing that will prime WestLB's first priority perfected

finance their cases and the multi-year construction of Phase II and because the proceeds from Phase I will be insufficient and are speculative, they also propose financing their administrative costs through $35 million of priming financing—financing that will only be available if WestLB's senior debt is primed and then restructured in some unspecified way. As demonstrated below, DB Capital's (and for that matter DB Land's) plan has no possibility of resulting in a successful reorganization within a reasonable time.

13. There are three essential reasons why DB Land and DB Capital do not have an effective reorganization in prospect. First, their proposed restructuring is not feasible as it (i) is premised on unrealistic sale milestones and prices, as well as the need for contingent DIP Loan and exit financing, and (iii) does not propose to pay WestLB's entire claim in full as required to avoid cramdown. *In re Pegasus Agency, Inc.*, 101 F.3d 882, 887 (2d Cir. 1996) (holding that a debtor's "reorganization plan's unfounded assumptions and dubious calculations rendered it entirely unreliable" such that there was "no prospect of an effective reorganization under any calculation of the debt"); *In re Gunnison Ctr. Apartments, LP* 320 B.R. 391, 404 (Bankr. D. Colo. 2005) (holding that the debtor's inability to find investments in the months pre-bankruptcy cast substantial doubt on the debtor's likelihood of reorganization). Second, their proposed restructuring is premised on cramdown and priming WestLB's liens with exit financing but they cannot provide adequate protection of WestLB's interests, let alone the required indubitable equivalent of its claim under section 1129(b)(2)(A)(iii). *Resolution Trust Corp. v. Swedeland Dev. Group, Inc.* (*In re Swedeland Dev. Group, Inc.*), 16 F.3d 552, 567-68 (3d Cir. 1994) (holding that a debtor's ability to obtain financing on a priming basis cannot form the basis for finding that the debtor has a reasonable possibility of reorganizing within a reasonable time when the secured creditor that will be primed is not adequately protected). Third, WestLB controls the necessary votes in both DB Land and DB Capital so that there will not be a consenting class of

---

security interest in all of DB Land's assets, namely the Real Property. To minimize the confusion caused by the filed Priming Motion and the purported future priming motion, and based on WestLB's understanding that they will seek substantially similar relief, both are referred to herein as the "Priming Motion." WestLB reserves the right to supplement this Motion to reflect the terms of the new Priming Motion when it is filed.

7

LA1 1957175

non-insiders for the plan. *Id.* at 568 (noting that where a secured creditor has a blocking position and has indicated its opposition to any plan proposed by the debtor, "for this reason, alone, an effective reorganization of [the debtor] is not realistically possible").

14. As an additional matter unique to DB Capital, in light of the ongoing dispute between DB Capital's two members, Dancing Bear Development, LP and Aspen HH Ventures, LLC, neither DB Management, LLC (as manger of DB Capital) nor Thomas DiVenere (as manager of DB Management, LLC) has the authority to propose a plan for DB Capital or DB Land. A debtor cannot propose a plan of reorganization unless the plan is authorized by the debtor's owners. *See In re Dark Horse Tavern*, 189 B.R. 576, 581 (Bankr. N.D.N.Y. 1995) (holding that only a board of directors, not a single officer, can authorize a corporate debtor to file a plan and a deadlocked board cannot do so). Further, under DB Capital's operating agreement, actions outside of the ordinary course, such as proposing a plan of reorganization, must be authorized by the unanimous vote of its members. However, DB Capital's two members are deadlocked. *Aspen HH Ventures, LLC's Objections to the DIP Financing Motion, Substantive Consolidation Motion and Applications to Retain Counsel and Accountants Filed on Behalf of Debtor* [Docket No. 119], ¶ 2. For this additional reason, it is highly unlikely that DB Capital can propose any plan of reorganization within a reasonable time.

//
//
//
//
//
//
//
//
//
//

LA1 1957175

## V. CONCLUSION

15. WHEREFORE, for all the foregoing reasons, WestLB respectfully requests that the Court: (i) grant WestLB relief from the automatic stay to permit WestLB to foreclose on the Membership Interest; (ii) grant WestLB relief from the automatic stay to permit WestLB to pursue remedies against its cash collateral; and (iii) grant such other and further relief as may be just and proper.

Dated: January 10, 2011

Respectfully submitted,

By: /s/ Christopher D. Bryan

Matthew C. Ferguson (#25687)
Christopher D. Bryan (#35522)

GARFIELD & HECHT, P.C.

601 East Hyman Avenue
Aspen, CO 81611
Telephone: (970) 925-1936
Facsimile: (970) 925-3008
Email: ferguson@garfieldhecht.com
cbryan@garfieldhecht.com

*Local Counsel for WestLB AG*

Richard W. Havel, *pro hac vice*
Ariella T. Simonds, *pro hac vice*

SIDLEY AUSTIN LLP

555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rhavel@sidley.com
asimonds@sidley.com

*Counsel for WestLB AG*