

Signed/Docketed
November 14, 2011

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No.  10-25805 MER |
| DB CAPITAL HOLDINGS, LLC, ) | (Involuntary Petition) |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| ) | |
| In re: ) | Case No.  10-36493 MER |
| ) | |
| DANCING BEAR DEVELOPMENT, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| In re: ) | Case No.  10-39584 MER |
| ) | |
| DANCING BEAR LAND, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## ORDER

This matter comes before the Court on the *United States Trustee's Motion to Dismiss Chapter 11 Case* filed in each of the above cases, and *WestLB AG's Opposition to United States Trustee's Motion to Dismiss*, filed in each of the above cases.  The Court having considered the evidence and the legal arguments presented by the parties, hereby finds and concludes as follows:

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), because it concerns the administration of the estate and the liquidation of the assets of the estate.

## BACKGROUND FACTS

The above-captioned cases involve the development and sale of interval interests in a residential resort project in Aspen, Colorado, known as the Dancing Bear Residences (the "Property"). The relationship among these three entities and their affiliates is as follows: Dancing Bear Land, LLC is solely owned by DB Capital Holdings, LLC. DB Capital Holdings, LLC has two members. The first, Aspen HH, an Illinois limited liability company, is the Class A member with a priority interest in all cash generated from the Property. The second, Dancing Bear Development, LP is a Colorado limited partnership comprised of two partners, Fred Funk and Thomas DiVenere ("Di Venere"). DB Capital Holdings, LLC is managed by a non-debtor entity, Dancing Bear Management, which is owned and controlled by DiVenere, but which does not have a membership or other interest in DB Capital Holdings, LLC.

Prior to May, 2010, Debtor DB Capital Holdings, LLC defaulted on its mortgage loan with WestLB AG ("WestLB"). As a result of this default, WestLB filed an action in the state district court for Pitkin County, Colorado. As part of that case, a receiver was put in place to manage the Property. DB Capital Holdings, LLC filed a voluntary Chapter 11 petition, Case No. 10-23242 MER. That case was dismissed by order of this Court on June 21, 2010. On June 24, 2010, an involuntary case was filed for DB Capital Holdings, LLC, Case No. 10-25805 MER, in which the order for relief was entered November 29, 2010. Dancing Bear Development, LLC filed voluntary Chapter 11 Case No. 10-36493 MER on October 19, 2010, and Dancing Bear Land, LLC filed voluntary Chapter 11 Case No. 10-39584 MER on November 23, 2010.

On May 25, 2011, this Court entered an Order in all three pending cases granting WestLB's motions for relief from stay as to the three Debtors, denying the Debtors' joint motion to approve post-petition financing, and denying Aspen HH's motion to appoint a Chapter 11 Trustee. Thereafter, WestLB completed foreclosure on the Property. WestLB has not yet commenced a foreclosure action against the personal property of DB Capital Holdings, LLC, and has not yet sought relief from the automatic stay to foreclose on the equity interests held by DB Capital Holdings, LLC and Dancing Bear Development, LLC in Dancing Bear Land, LLC.

The UST and WestLB agree the facts of the three cases establish "cause" sufficient under 11 U.S.C. § 1112(b)[1] for either dismissal or conversion of the cases. They disagree about whether dismissal or conversion is in the best interests of creditors and the estates. The Debtors did not file responses to the UST's motions, but their counsel indicated the Debtors support dismissal.

The parties further agree WestLB is the largest creditor of each of the Debtors. WestLB was scheduled by the Debtors as a secured creditor in each of the cases with a claim of $53,900,000.00. WestLB is the only creditor listed in the Dancing Bear Land, LLC case. In Dancing Bear Development, LLC, the only other claims listed are unsecured claims of insiders.

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

In DB Capital Holdings, LLC, unsecured claims of $3.5 million are listed on Schedule F – of that amount, approximately $1.5 million was scheduled as owing to insiders.

At the July 6, 2011 foreclosure sale, WestLB credit bid a portion of its senior secured debt in the amounts of $20,413,838 and $14,501,162, respectively, for the two parcels comprising the Property. WestLB asserts a secured claim against other property of the Debtors for the deficiency resulting from the foreclosure sale. WestLB further asserts its claims against the Debtors continue to be secured by, among other things, security interests in two accounts maintained with Community Banks of Colorado (the "Sales Accounts") containing approximately $2,667,854.85. WestLB's and the Debtors' respective rights to the Sales Accounts are subject to ongoing litigation in the District Court of Pitkin County, Colorado, Case No. 10 CV 93 (the "State Court Interpleader").

The Debtors' schedules reflect Dancing Bear Land, LLC's only asset was the Property, now owned by an affiliate of WestLB. Dancing Bear Development LLC's only scheduled asset is a 55.6% interest in DB Capital Holdings, LLC. DB Capital Holdings, LLC's assets are listed in Schedule B in an "unknown" amount and include furniture, fixtures and art located at the Property, and its 100% membership interests in various entities, including Dancing Bear Land, LLC. WestLB asserts all the assets of material value scheduled by the Debtors in each of these cases are subject to its liens.

The parties agree there is no cash available for a Chapter 7 Trustee, and there is no unencumbered real or personal property of any material value available for a Chapter 7 Trustee to collect and liquidate for the benefit of unsecured creditors. The Debtors may have claims against DiVenere.[2] In addition, the Debtors are pursuing two civil actions against WestLB, which have been consolidated, and are currently pending in the District Court of Pitkin County, Colorado. Further, the State Court Interpleader has been consolidated with a related civil action commenced in the same court by the Debtors, Case No. 11 CV 167 (the "Lender Liability Action"). The Debtors are continuing their litigation efforts in these two proceedings in the District Court for Pitkin County, Colorado. WestLB is opposing the Debtors and their efforts in those cases.

The parties have identified the following unresolved motions, contested matters and adversary proceeding currently pending before the Bankruptcy Court in these cases, all of which were either taken off the calendar or not yet scheduled for hearing:

a) *Motion of WestLB AG for Order Excusing Receiver from Compliance with 11 U.S.C. § 543* (Filed 12/03/10).

b) *Motion of WestLB AG to Dismiss the Voluntary Petition of Dancing Bear Land, LLC for Lack of Authority* (Filed 12/17/10).

---

[2] DiVenere is currently a Debtor in a Chapter 11 proceeding pending in the U.S. Bankruptcy Court, Middle District of Florida (Jacksonville), Case No. 3:10-bk-04524-PMG.

c) *Motion by Debtors for Substantive Consolidation of the Debtors' Estates* (Filed 12/17/10).

d) DB Capital Holdings, LLC, Dancing Bear Development, LP, Dancing Bear Land, LLC v. WestLB AG, 11-ap-01236-MER, consisting of a single remaining claim for equitable subordination, which has been held in abeyance (Filed 06/21/11).

e) *WestLB AG's Renewed Motion for Order Excusing Receiver from Compliance with 11 U.S.C. § 543* (filed October 18, 2011).

## DISCUSSION

The question in this case is not *whether* cause exists to dismiss or convert. The only remaining issue is *which* alternative is preferable. There is no "bright-line test to determine [whether] conversion or dismissal is in the best interests of creditors and the estate."[3] However, another division of this Court has noted:

> Section 1112(b)'s requirement that a court must examine the best interests of the estate, as well as the best interests of the creditors, strikes that balance. The best interests of the creditors test addresses the interests of the creditor body as a whole. It is inevitable that different creditors, even if similarly situated, will fare differently outside of bankruptcy. <u>Therefore, the best interests of creditors test focuses on the interest of the entire creditor body; it does not focus on individual creditor interests</u>.
>
> The interests of individual creditors are protected by the requirement that a court examine the best interests of the estate. The focus of that test is upon the economic value of the debtor; it compares the economic value of the debtor in a converted case to its value after dismissal. *In re Staff Inv. Co.*, 146 B.R. 256 (Bankr. E.D. Cal. 1992) ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. The estate is defined in terms of interests in property."). A bankruptcy court cannot insure that all creditors will make a pro-rata recovery of their debts after dismissal of a bankruptcy case. But, when a court determines that a debtor's economic value is likely to be greater by dismissing the case rather than converting it, the court maximizes the opportunity of individual creditors to recover their claims.[4]

More recently, the Bankruptcy Court for the Eastern District of New York also discussed the issue:

---

[3] *In re Westhampton Coachworks, Ltd.*, 2010 WL 5348422, at *6 (Bankr. E.D. N.Y. Dec. 21, 2010); *See also In re Tuscan Sun Ristorante*, Inc., 2010 WL 4929444, at *3 (Bankr. E.D. N.Y. Nov. 30, 2010); *In re BH S & B Holdings*, 439 B.R. 342, 346 (Bankr. S.D. N.Y. 2010).

[4] *In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006) (emphasis added).

Conversion supports the Bankruptcy Code policy of "vigorous maximization of the value of the economic enterprise." *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Ca. 1992). Value for the estate and creditors may be enhanced through a trustee's avoiding powers if the trustee discovers assets to bring into the estate. *See In re Ameribuild Constr. Mgmt., Inc.*, 399 B.R. 129, 134 (Bankr. S.D. N.Y. 2009) (Chapter 7 trustee would be "independent fiduciary" who could examine claims and transactions and prosecute as appropriate). Value also may be created where, by converting the case, an orderly liquidation of the debtor's assets will occur and a prompt conclusion to the bankruptcy process may be anticipated. And where a majority of creditors favor one result over the other, "the consensus of a majority of . . . creditors" is another factor which may guide the court in determining what is in their best interests. *Rollex Corp. v. Assoc. Materials, Inc. (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994).

The possible benefits of conversion must be weighed against the incremental costs to the estate. Where a trustee would impose an unaffordable burden, dismissal may well be in the estate's best interests. *Midwest Props.*, 2010 WL 5258977, at *6. But where there is a prospect of the recovery of assets, conversion may be in the best interests of the estate and the creditors despite these costs. *See BH S & B Holdings*, 439 B.R. at 351.

And a trustee's ability to examine the estate as an independent fiduciary and administer it in an orderly fashion protects creditors, just as "the benefits of bankruptcy protection" benefitted the debtor. *Tuscan Sun*, 2010 WL 4929444, at *5. Viewed another way, if "[t]he creditors . . . are better served by the centralized collection and disbursement provided by the bankruptcy process," then conversion, rather than dismissal, is in the best interests of creditors and serves as the preferred remedy. *Coachworks*, 2010 WL 5348422, at *7.[5]

Finally, the Bankruptcy Court for the District of Kansas recently observed:

[T]he decision whether to convert to Chapter 7 or to dismiss is committed to the discretion of the bankruptcy court. The standard for choosing conversion or dismissal based on "the best interest of creditors and the estate" implies a balancing test to be applied through case-by-case analysis. <u>The element of the best interest of creditors requires the Court to consider which alternative would be most advantageous to the parties. The element of the best interest of the estate focuses</u>

---

[5] *In re Babayoff*, 445 B.R. 64, 81-82 (Bankr. E.D. N.Y. 2011); *see also In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 719 (Bankr. D. Md. 2011); *In re Van Eck*, 425 B.R. 54, 67 (Bankr. D. Conn. 2010); *In re Vaughan*, 429 B.R. 14, 31-32 (Bankr. D. N.M. 2010); *In re Ramreddy, Inc.*, 440 B.R. 103, 115-116 (Bankr. E.D. Pa. 2009).

<u>upon whether the economic value of the estate is greater inside or outside of bankruptcy</u>.[6]

The Court has considered the guidance expressed in these cases. After doing so, this Court concludes the facts in the within cases lack support for conversion. Even if a trustee, with no funds to support litigation, manages to recover any assets from potential lawsuits, any such assets would be consumed by the cost of litigation and would, in any event, go primarily (if not only) to WestLB, the only substantial creditor in the case. In such a circumstance, a trustee might well decide to abandon recovery efforts to the Debtors, and, ultimately, to WestLB. As to the trustee's independent investigation of the Debtors' affairs, the Court notes such an investigation could not proceed in the absence of funding for accounting and other services, and more easily could be conducted outside of bankruptcy by WestLB, if appropriate. In short, any attempt at conversion for the benefit of creditors would be futile, and would result in administrative expenses the estates cannot afford, and absolutely no hope of recovery for unsecured creditors.[7]

IT IS THEREFORE ORDERED the United States Trustee's Motions to Dismiss the three above-captioned cases are GRANTED.[8]

THE COURT ORDERS the above-captioned bankruptcy cases are DISMISSED.

DATED: November 14, 2011

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge

---

[6] *In re Gateway Ethanol, L.L.C.*, 2011 WL 597059, *2 (Bankr. D. Kan. February 11, 2011) (slip copy) (emphasis added).

[7] *See In re Mitan*, 573 F.3d 237, 247 (6th Cir. 2009) (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1138 (6th Cir. 1985) (Concluding courts should dismiss a case when conversion to Chapter 7 would be futile).

[8] As a result of this ruling, all pending motions are deemed denied.